ROBERT L. KEENEY *vs.* SPRINGFIELD STREET RAILWAY COMPANY.

ARTHUR RENARD *vs.* SAME.

Hampden.    September 25, 1911. — October 16, 1911.

Present: RUGG, C. J., HAMMOND, BRALEY, & SHELDON, JJ.

*Negligence,* In use of highway.

In an action against a street railway corporation for damage to the plaintiff's automobile from being run into by an electric car of the defendant when it was standing upon the track on which the car was approaching, there was evidence that the accident occurred on a dark night when a little snow was falling, that before the accident the plaintiff was driving his automobile on the highway at a speed of not more than fifteen miles an hour, that he saw a light ahead of him and thought that it was on the rear of a vehicle going in the same direction with himself, that accordingly he turned to the left to go around it, when he discovered that a horse and wagon were coming toward him and in trying to avoid a collision turned sharply to the left, that the rear of the automobile skidded slightly in the wet snow and struck the horse a glancing blow, which did not throw down the horse or upset the wagon, that at the instant of contact the plaintiff turned his wheel and put on his brakes so suddenly as to stall his engine and that the automobile started skidding, stopping finally across the track of the defendant, that, when the automobile stopped, its top collapsed covering the sides and tonneau and also falling upon the front seat, that the plaintiff crawled out and examined his automobile, when he noticed the glare of the headlight of an approaching electric car, then distant over a quarter of a mile, that he started running up the track toward the approaching car, and as he got into the glare of the headlight held up his arms and waved them, that he ran thus a distance of about one hundred and seventy-five feet from the automobile, until he was obliged to step to one side to avoid being run over, that the car passed him without slackening its speed and moving at the rate of at least from thirty-five to forty miles an hour, that as the car passed the plaintiff stood on the travelled way waving his hands, and the car proceeded to run down the automobile. *Held,* that there was evidence for the jury, not only of negligence of the defendant's motorman, but also of due care on the part of the plaintiff.

TWO ACTIONS OF TORT, against a street railway corporation, the first for damage to an automobile belonging to the plaintiff from being run into by an electric car of the defendant on the

night of November 23, 1909, on Longmeadow Street in Long-meadow, and the second by the chauffeur of the plaintiff in the first case, who was in the tonneau of the automobile at the time of the collision, for personal injuries thereby sustained. Writs dated January 15 and March 17, 1910.

In the Superior Court the cases were tried together before *Sanderson*, J. There was evidence introduced by the plaintiffs of the following facts:

The accident happened between eleven and twelve o'clock on a dark night while the two plaintiffs were on their way from Springfield to Somerville, Connecticut, and were travelling south. It had been snowing during the evening but this nearly had ceased when the plaintiffs left Springfield, and at the time of the accident it was snowing very little. There were two or three inches of new snow on the ground. The two men were alone in the automobile, the plaintiff Keeney driving and sitting in the front seat on the right behind the glass front, which was up, and the plaintiff Renard, who was Keeney's chauffeur, sitting in the tonneau. The top of the car was up. The back curtain was on but not the side curtains. The car was equipped with electric side lights and a tail light, and with two gas headlights, all of which were lighted. Just before the accident the plaintiff Keeney was driving in the centre of the travelled way. He noticed a light, which afterwards was found to be a lantern, ahead, and, supposing it to be on the rear of a vehicle going in the same direction that he was, he turned the automobile to the left, intending to go around it. An instant later he saw that a horse and wagon were travelling north, toward him. As Keeney turned to the left the driver of the horse turned to his right. Instantly Keeney turned his steering wheel " way over to the left in order to avoid him." The rear of his car skidded slightly in the wet snow and the automobile struck the horse a glancing blow near the shoulder, and as it passed him some portion of the harness or shaft caught in the top of the automobile, with the effect, not of throwing the horse down, but of turning him around with the automobile. At the instant of contact the plaintiff Keeney turned his wheel and put on his brakes so suddenly as to stall his engine, and the automobile started skidding the other way, stopping finally across the south bound or westerly track with

the front facing the west, and with the head of the horse caught in the top of the automobile and the horse alongside of it and facing east. As the automobile stopped the top collapsed, covering the sides and the tonneau and also falling down upon the front seat. The collision did not jar or otherwise affect Keeney, nor did it damage the automobile beyond a few scratches. The horse followed the automobile around, taking the wagon with him, but the latter was not overturned or its contents disturbed in any way. Just before this accident the speed of the automobile did not exceed fifteen miles per hour. At the instant of contact with the team the speed was about six miles an hour. As soon as the automobile came to a stop the plaintiff Keeney crawled out from under the front rib of the top, which was over the back of the front seat, and got out on the left or southerly side of the automobile. He saw that the top was down over the sides of the car, blocking egress through either tonneau door. He tried the left door but was unable to open it because of the position of the top, and upon going around the rear of the automobile he saw that the right door was in the same condition. At that instant he noticed up the track to the north the glare of the headlight of an approaching electric car south bound, the car then being distant over a quarter of a mile. Calling to Renard and the driver of the horse to look out for the car, he at once started running up the south bound track toward the oncoming electric car. As he got into the glare of the headlight he held up his arms and waved them. He ran a distance of about one hundred and seventy-five feet from the automobile and then was obliged to step to one side to avoid being run over. The car approached without slackening its speed and passed him while moving at a rate of at least thirty-five to forty miles an hour. As it passed he stood on the travelled way waving his hands. He immediately started back after the car and had gone a few feet when the collision with the automobile occurred, the car carrying the automobile down the track a considerable distance, and the crash being very severe. After the collision the car and the automobile were found to be locked together with the wagon between them in a totally demolished condition. The tonneau of the automobile was practically destroyed. Upon examination it was found to be empty and the plaintiff Renard was discovered lying

unconscious in the snow close to the front steps of the car on the left side.

At the close of the plaintiffs' evidence, the judge ordered a verdict for the defendant in each case, with a stipulation of the parties that, if the ruling of the judge in ordering verdicts for the defendant was wrong, judgment should be entered for the plaintiff Keeney in the sum of $750 and for the plaintiff Renard in the sum of $2,000 ; and that, if the ruling of the judge was right, judgment should be entered on the verdicts. The plaintiffs alleged exceptions, which were allowed by the judge subject to this stipulation.

The cases were submitted on briefs.

*D. E. Leary, E. W. Beattie, Jr., & G. D. Cummings,* for the plaintiffs.

*H. W. Ely & J. B. Ely,* for the defendant.

SHELDON, J.   Apparently it was not disputed that the plaintiffs' automobile was duly licensed in Connecticut, that they had violated none of the requirements of our statute then in force (St. 1909, c. 534, §§ 3, 10), and that they were rightfully operating their machine in this Commonwealth. The rule stated in *Chase* v. *New York Central & Hudson River Railroad,* 208 Mass. 137, 156, and the cases there cited, has no application here.

The jury could have found that the accident was due to negligence of the defendant's motorman in driving his car at an excessive rate of speed, in failing to observe Keeney as the latter ran up the track towards the car waving his hands and trying to attract the motorman's attention, and in not stopping his car in season to avoid running into the automobile. This is too obvious to require prolonged discussion or reference to many decisions. See *Lawrence* v. *Fitchburg & Leominster Street Railway,* 201 Mass. 489, 493. The cases must turn upon the question whether there was evidence that the plaintiffs were in the exercise of due care.

In our opinion there was such evidence. The fact that their machine had been thrown across the defendant's track in consequence of a collision with a horse and wagon is not decisive against them. Keeney, who was driving the automobile, had seen a light ahead of him and thought that it was on the rear of

a vehicle going in the same direction with himself. If this had been so, his turning to the left to go around it would have been proper. R. L. c. 54, §. 2. Nor was his mistake necessarily due to negligence. The night was dark; a little snow was falling. It was for the jury to say whether his mistake showed negligence. When he discovered his mistake, it was for the jury to say whether he acted with due care in trying to avoid a collision by turning sharply to the left; and the same is true of all his management of the automobile until it came to a standstill upon the defendant's track. Nor did he then, like the plaintiff in *Lawrence* v. *Fitchburg & Leominster Street Railway*, 201 Mass. 489, rely solely upon the vigilance and diligence of the motorman. According to his own testimony, he ran toward the approaching car over a distance of nearly two hundred feet in an effort to warn the motorman and avert a collision which could be avoided only by a timely stopping of the car. We think it manifest that the issue of his due care was for the jury.

Renard's due care was also for the jury to determine. We cannot say that any conduct of his contributed to the happening of the accident. Whether he ought to have warned Keeney before the collision with the horse and wagon, and whether he made proper efforts to get out of the automobile after the top had shut down upon him, were questions of fact upon which we cannot pass.

As the only question raised is whether the cases should have been submitted to the jury, we need not consider whether any negligence of Keeney, if such had been found, would have been imputed to Renard also, and so would have barred a recovery by either plaintiff.

In neither of these cases should a verdict for the defendant have been ordered. It follows, under the stipulations, that judgment must now be entered in favor of Keeney for $750 and costs and in favor of Renard for $2,000 and costs.

*So ordered.*