BERTHA CARR, Administratrix, Appellant, v. INTER-URBAN RAILWAY COMPANY, Appellee and Cross-Appellant.

**NEGLIGENCE:** Last Clear Chance and Actual Knowledge. *Actual* knowledge of the negligence of an injured party is essential to the application of the doctrine of "last clear chance,"—not reasonable ability to discover such negligence.

*Appeal from Polk District Court.*—CHAS. A. DUDLEY and THOMAS J. GUTHRIE, Judges.

MARCH 21, 1919.

PLAINTIFF, who is the surviving widow of John T. Carr, who was killed about 6 o'clock A. M. on the morning of December 1, 1916, while walking north on East Thirty-third Street, near the intersection thereof with Cleveland Avenue in the city of Des Moines, brings this action, as administratrix of his estate. When about on Cleveland Avenue, deceased met a southbound street car, and stepped from between the east and west tracks of defendant onto the track. When somewhere near the north side of Cleveland Avenue, he was struck by a northbound interurban car, and fatally injured. A trial was had in the district court, resulting in a verdict for plaintiff. Upon motion of defendant, the verdict was set aside, and a new trial granted, on account of errors in two instructions. Both parties appeal. The

questions presented do not call for a detailed statement of the evidence. Plaintiff, having first completed her appeal, is denominated the appellant.—*Affirmed.*

*Clark, Byers & Hutchinson* and *R. P. Thompson,* for appellant.

*W. H. McHenry* and *A. B. Howland,* for appellee and cross-appellant.

STEVENS, J.—I. On account of the death of the trial judge before ruling upon defendant's motion for a new trial, same was passed upon and sustained by Honorable Thomas J. Guthrie, one of the judges of the Polk County district court. It was sustained upon the ground that prejudicial error was committed by the court in two of its instructions to the jury. Argument of counsel, however, covers numerous exceptions to these instructions taken at the time of the trial, but not referred to by the court in its ruling upon the motion.

Instruction No. 7, which the court, in passing upon the motion for new trial, held to be erroneous, related to the doctrine of the "last clear chance." In this instruction, the court charged that, if the motorman saw, or, by the exercise of reasonable diligence, could have seen decedent in time to have warned him of the approaching car, in time to have, by the exercise of reasonable care upon his part, so controlled his car as to prevent the accident, and he failed to do so, defendant was guilty of negligence, even though decedent was negligent in going upon the track.

Counsel for appellee contends that the evidence did not justify the giving of an instruction upon this point, and also that the instruction given does not correctly state the law. In view of the conclusion reached herein, and the possibility of a retrial, we refrain from discussing or expressing an opinion as to the sufficiency of the evidence to justify the giving of an instruction upon this point, and pro-

ceed to consider counsel's exceptions to the court's statement of the law. The "last clear chance" doctrine, as adopted in this state, has often been stated and defined by this court. In *McCormick v. Ottumwa R. & L. Co.,* 146 Iowa 119, the court said:

" 'The party who has the last opportunity of avoiding an accident is not excused by the negligence of anyone else. His negligence, and not that of the one first in fault, is the proximate cause of the injury.' Again, it has been stated in this way: 'Where both parties are negligent, the one that has the last clear opportunity to avoid the accident, notwithstanding negligence of the other, is solely responsible for it; his negligence being deemed the direct and proximate cause of it.' The rule is bottomed sometimes upon one proposition, and sometimes upon another, and sometimes upon both. The first is that, in such cases, defendant's negligence, instead of being concurrent, is the sole and proximate cause of the injury; and the other is that plaintiff's negligence is no defense to wanton or willful negligence. When bottomed solely upon the last proposition, to wit, wantonness or willfulness, it is apparent that something more than the want of ordinary care is necessary. The injury must either be willful, or, as said in some cases, be due to such gross negligence as that wantonness or willfulness may be inferred. When bottomed upon the former proposition,—that is to say, upon the doctrine that defendant's negligence, being last in point of time, is the proximate, and plaintiff's precedent negligence the remote, cause,—neither wantonness or willfulness nor their equivalent need be shown. But it must appear in such cases that plaintiff's and defendant's negligence are not concurrent in point of time. If concurrent in this sense, then there can be no recovery, save where the rule of comparative negligence obtains."

Again, in *Wilson v. Illinois Cent. R. Co.*, 150 Iowa 33, at 41:

"The doctrine of last fair chance presupposes negligence on the part of the party injured, and proceeds upon the theory that, notwithstanding this negligence, if the other party, being cognizant of that negligence and of the peril in which the party had placed himself, failed to take the necessary precautions to avoid injuring him, he is liable on the theory that he had a fair chance to avoid the catastrophe by the use of ordinary care, and his failure to exercise it is, in such cases, the proximate cause of the injury. It is defendant's subsequent negligence, after discovering the peril, differing in every essential from the mere continuation of the original negligence, for which he is held liable." See also *Purcell v. Chicago & N. W. R. Co.*, 117 Iowa 667; *Bourrett v. Chicago & N. W. R. Co.*, 152 Iowa 579; *Wolfe v. Chicago G. W. R. Co.*, 166 Iowa 506; *Doherty v. Des Moines City R. Co.*, 137 Iowa 358.

It will be observed, as stated above, that the instruction charged the jury that, if the motorman in fact saw deceased in a position of peril, or if, by the exercise of reasonable diligence, he could have seen him in a position of peril, in time to have avoided the injuries, and failed to do so, then, notwithstanding it also found that deceased was negligent, its verdict should be for plaintiff,—thus making ability to see the equivalent of seeing.

Mr. Justice Sherwin, speaking for the court, in *Bourrett v. Chicago & N. W R. Co.*, supra, said:

"The doctrine of last chance is founded on actual knowledge of the plaintiff's negligence, and this court has consistently so held in all cases where the facts were similar to the facts presented here, and such holding has been uniform in nontrespass as well as in trespass cases."

And again, in *Wilflin v. Des Moines City R. Co.*, 176 Iowa 642:

"Of course, the motorman must have seen the person in peril on the track ahead in time to have avoided a collision."

See, also, *Wolfe v. Chicago G. W. R. Co.*, supra, and *Doherty v. Des Moines City R. Co.*, supra.

It will thus be seen that the doctrine of "last clear chance" presupposes that the engineer or motorman had actual knowledge of the injured person's peril, in time, by the exercise of ordinary care, to have avoided the accident. This is equally true whether the injuries complained of were received upon a steam railroad or street railway. No distinction exists in this respect.

Counsel for appellant cites numerous of our decisions which, he contends, sustain the instruction; but, upon careful analysis, they will be found not to do so. In *Welsh v. Tri-City R. Co.*, 148 Iowa 200, the first of the cases cited and relied upon by appellant upon this point, the instruction, although not set out in the opinion, apparently was similar to the instruction under consideration. It was sustained upon the theory that the evidence tended to show that the motorman in fact saw the plaintiff on the track in time to have prevented the accident.

In *Hutchinson, etc., Co. v. Des Moines City R. Co.*, 172 Iowa 527, the motorman testified that he saw the auto truck and driver before the accident, and, under the facts, the jury could have found, in time to have prevented the accident; while in *Davidson Bros. Co. v. Des Moines City R. Co.*, 170 Iowa 467, the court held that the instruction complained of did not submit the "last clear chance" rule to the jury, and therefore, this case is not in point.

In *Doherty v. Des Moines City R. Co.*, 137 Iowa 358, the writer of the opinion discussed, to some extent, the "last clear chance" doctrine, but held that the evidence did not call for its application.

*Bridenstine v. Iowa City Elec. R. Co.*, 181 Iowa 1124,.

is not in conflict with the conclusion reached herein. Numerous other cases cited need not be considered separately. Suffice it to say that none of them sustain the instruction in question.

Pointing out the distinction between the care required by the motorman in charge of a street car and the engineer upon a steam railroad, which is important in this connection, the court, in *Barry v. Burlington R. & L. Co.*, 119 Iowa 62, said:

"The distinction between the care required in connection with the running of a railway train, operated on a right of way, as to which the railroad company enjoys the exclusive right of possession, and the care which should be exercised in the running of a street car, operated in the public streets of a city, is manifest. Those operating a street car, under such circumstances, are bound to do so with regard to the safety of persons rightfully upon the public streets; for the street car track, notwithstanding its additional use, remains a part of the street."

And again, in *Welsh v. Tri-City R. Co.*, supra:

"It is well settled, however, that the duty of the motorman on a street car to be on the lookout for persons within or approaching the zone of danger is different from that of an engineer in charge of a railway engine operated along a right of way, where there is no reason to anticipate the approach of persons to the track."

See, also, *Doherty v. Des Moines City R. Co.*, supra; *Doran v. Cedar Rapids & M. C. R. Co.*, 117 Iowa 442; *Watson v. Boone Elec. Co.*, 163 Iowa 316, 317; *Wilflin v. Des Moines City R. Co.*, supra.

Based upon the duty of the motorman to keep a constant lookout ahead, and to each side in front of his car, for vehicles or pedestrians upon or about to pass upon the track, we have repeatedly held, as was said in *McCormick v. Ottumwa R. & L. Co.*, supra, that, "as bearing upon the ques-

tion as to whether or not he [the motorman] did see, his duty to be on the lookout for persons who may rightfully be upon the track is evidence of the fact that he did, in fact, see the party injured;" and in *Barry v. Burlington R. & L. Co.,* supra, the court said:

"And in this case, the finding of the jury that the motorman, who was shown to have been on the front platform of the car, from which he could easily see the surface of the street immediately in front, as he was advancing,—and the fact that it was his duty, not only under the rules of the company, which were admitted in evidence, but also under the general requirement of the exercise of care in operating the car,—did see the deceased in time to have avoided the fatal injury to him, would have had support in the evidence."

And, again, in *Wilflin v. Des Moines City R. Co.,* the court re-affirmed its prior holding on this question, as follows:

"Of course, the motorman must have seen the person in peril on the track ahead in time to have avoided the collision, according to the majority in *Bourrett v. Chicago & N. W. R. Co.,* 152 Iowa 579; but on the duty to keep a lookout and a clear field of vision may be based a finding that he did see, in a suit against a street railway."

The degree of care required of pedestrians or drivers of vehicles about to go upon a street railway track is well stated in the following cases: *Barry v. Burlington R. & L. Co.,* supra; *Perjue v. Citizens' Elec. L. & G. Co.,* 131 Iowa 710; *Engvall v. Des Moines City R. Co.,* 145 Iowa 560, 561; *Welsh v. Tri-City R. Co.,* supra; *Watson v. Boone Elec. Co.,* supra; *Wilflin v. Des Moines City R. Co.,* supra.

Amplification of the rules stated in the foregoing cases could amount to little more than a restatement thereof. It is the duty of the motorman to keep constant lookout for pedestrians, or the drivers of vehicles, whose right to

the use of the street is equal to that of the street railway, and if he sees a person in a position of peril upon the track in time to do so, he must stop the car, or use such other means as are available to him to avoid injuring such person; and if it appears from the evidence that he had a clear, unobstructed view of the track, the jury may infer, from his duty to keep a lookout ahead, that he in fact saw the injured person in a position of peril. This inference may, of course, be rebutted by evidence to the contrary.

It follows that the instruction in question was erroneous in the respect indicated, and defendant's motion for a new trial was, therefore, properly sustained.

II. The other instruction relating to diverting circumstances, found erroneous by the court could not have been otherwise than confusing to the jury. Its meaning is not clear. In view of a possible retrial of the case, a discussion of the law of diverting circumstances at this time could hardly be profitable. The evidence may not be the same upon a second trial. As the ruling of the court sustaining defendant's motion for a new trial is affirmed, it is unnecessary to consider defendant's appeal. For the reasons indicated, the judgment of the court below is—*Affirmed*.

LADD, C. J., EVANS and GAYNOR, JJ., concur.